IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED

03 OCT -6 PM 3:54

SUSAN SAWYER INDIVIDUALLY AND AS THE DULY APPOINTED PERSONAL REPRESENTATIVE FOR THE WRONGFUL DEATH OF BETTY MARIE NANCE, DECEASED, CHRISTINE BETTENDORF, BOB NANCE AND DAVID NANCE, CHILDREN OF THE DECEASED BETTY MARIE NANCE,

Plaintiffs,

CIV - 03 - 1170 JC RHS

vs.

No. CV ____________________

FORD MOTOR COMPANY,

Defendant.

## NOTICE OF REMOVAL

TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO:

Pursuant to 28 U.S.C. §§ 1441 and 1446, Petitioner Ford Motor Company respectfully submits this Notice of Removal. As grounds for removal, Ford states as follows:

**Background and Procedural Prerequisites for Removal.**

1. On July 17, 2003, Plaintiffs commenced an action in the Fourth Judicial District Court, County of Mora, State of New Mexico, cause number CV-2003-38 ("State Court Action") styled *Susan Sawyer Individually And As The Duly Appointed Personal Representative For The Wrongful Death Of Betty Marie Nance, Deceased, Christine Bettendorf, Bob Nance And David Nance, Children Of The Deceased Betty Marie Nance, Plaintiffs vs. Ford Motor Company, Defendant.* Ford was served with process in the State Court Action on September 5, 2003. Copies of all process, pleadings and orders served on Ford are attached as Ex. A.

2. This Court's jurisdiction must be assessed by examining the complaint filed in the

State Court Action on its face as of the time of filing this Notice of Removal. *See Wisconsin Dept. of Corrections v. Schact*, 524 U.S. 381, 390 (1998) ("[F]or purposes of removal jurisdiction, we are to look at the case as of the time it was filed in state court") (citing *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938) ("[T]he status of the case disclosed by the plaintiff's complaint is controlling in the case of removal.")); *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488 (10th Cir. 1991) ("[T]he propriety of removal is judged on the complaint as it stands at the time of removal.").

**The Proper Parties in this Action are Citizens of Different States.**

4. Plaintiffs are citizens of the States of Colorado and Oregon. (Compl. ¶¶ 1-5).

5. Defendant Ford is a Delaware corporation, with its principal place of business in Michigan. There is complete diversity between Plaintiffs and Ford.

**The Amount in Controversy Exceeds $75,000.**

6. The amount in controversy for removal jurisdiction is determined normally by reference to allegations in the plaintiffs' complaint. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). In the Complaint, Plaintiffs do not allege any specific dollar amount for the damages that they supposedly suffered as a result of a personal injury. Plaintiffs' Complaint, however, alleges that Betty Marie Nance was killed and seeks damages attendant to her "wrongful death." (*See* Cmpl. ¶ 52.) Upon information and belief, if proven the claimed injuries would result in damages greater than $75,000.

7. In the event the Court does not find Plaintiffs' allegations alone to be dispositive of the amount in controversy, the Court should look to the factual allegations set forth in this Notice of Removal. *See Laughlin*, 50 F.3d at 873.

8. As alleged in Plaintiffs' Complaint, Plaintiffs have suffered damages related to the wrongful death of Betty Marie Nance. Upon information and belief, injuries such as the losses are compensable at an amount greater than $75,000. As a result, Plaintiffs' complaint for damages satisfies the $75,000 jurisdictional threshold.

9. Given the complete diversity of the parties and an amount in controversy in excess of $75,000 for Plaintiff, this Court has jurisdiction over the causes of action and claims asserted in the State Court Action pursuant to 28 U.S.C. § 1332, and this action properly is removable pursuant to 28 U.S.C. § 1441.

WHEREFORE, Ford Motor Company respectfully requests that the State Court Action now pending in the Fourth Judicial District Court, County of Mora, State of New Mexico, cause number CV-2003-38, be removed to this Court, and ask that this Court make and enter such further orders as may be necessary and proper.

SNELL & WILMER, LLP
Vaughn Crawford
Kim Magyar
One Arizona Center
Phoenix, Arizona 85004-2202
TEL: [602] 382-6000

- and -

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By ______________________________
Jeffrey M. Croasdell
Attorneys for Ford Motor Company
Post Office Box 1888
Albuquerque, New Mexico 87103
Telephone: (505) 765-5900

We hereby certify that a copy of the foregoing pleading was mailed to counsel of record this 6th day of October, 2003.

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By________________________________

Jeffrey M. Croasdell

FILED IN MY OFFICE THIS
2003 SEP -2 AM 10:27
COURT ADMINISTRATOR

FOURTH JUDICIAL DISTRICT COURT
COUNTY OF MORA
STATE OF NEW MEXICO

SUSAN SAWYER INDIVIDUALLY AND
AS THE DULY APPOINTED
PERSONAL REPRESENTATIVE
FOR THE WRONGFUL DEATH OF
BETTY MARIE NANCE, DECEASED,
CHRISTINE BETTENDORF, BOB NANCE
AND DAVID NANCE, CHILDREN OF
THE DECEASED BETTY MARIE NANCE

Plaintiffs

CAUSE NO. 2003-38-CV

V

THE FORD MOTOR COMPANY

Defendants.

**ORIGINAL COMPLAINT FOR WRONGFUL DEATH, STRICT LIABILITY, NEGLIGENCE, LOSS OF CONSORTIUM AND PRIMA FACIE TORT**

COME NOW the Plaintiffs, by and through their attorneys of record, Bannerman & Williams, P.A. and Tab Turner & Associates, P.A. and for their Complaint state:

## PARTIES

1. **Susan Sawyer** is the duly appointed personal representative of Betty Marie Nance, deceased, under the New Mexico Wrongful Death Act, NMSA § 41-2-1, et seq. (1978) ("the Act"). She is a surviving daughter of the deceased, Betty Marie Nance, who will share in the

EXHIBIT
A

recovery of damages pursuant to § 41-2-3 of the Act. Susan Sawyer is a resident of Colorado Springs, Colorado.

2. **Betty Marie Nance** was born on August 8, 1933. She was divorced, and at the time of her death on August 25, 2001, she worked as a part-time driver for Enterprise Leasing Company of Denver, 13111 East Briarwood Ave, Ste 300, Englewood, CO 80112 ("Enterprise"). She was the mother of Plaintiffs Susan Sawyer, Christine Bettendorf, Bob Nance and David Nance. She was killed in an accident caused by the Defendant.

3. **Christine Bettendorf** is a surviving daughter of the deceased, Betty Marie Nance, who will share in the recovery of damages pursuant to § 41-2-3 of the Act. She is a resident of Colorado Springs, Colorado.

4. **Bob Nance** is a surviving son of the deceased, Betty Marie Nance, who will share in the recovery of damages pursuant to § 41-2-3 of the Act. He is a resident of Monument, Colorado.

5. **David Nance** is a surviving son of the deceased, Betty Marie Nance, who will share in the recovery of damages pursuant to § 41-2-3 of the Act. He is a resident of Portland, Oregon.

6. **Ford Motor Company** (hereafter referred to as "Ford") is a corporation with its primary office in Dearborn, Michigan. Ford is authorized to and does conduct business in New Mexico; has designated agents and dealers in New Mexico; and through its dealers derives substantial economic profits from this state. As such, Ford is subject to personal jurisdiction in New Mexico. Ford's agent for service of process is the CT Corporation System, P.O. Box 9318, Santa Fe, New Mexico, 87504. Ford manufactured, warranted, and placed in the stream of commerce the 2002 Ford Explorer in which Betty Marie Nance was killed.

## VENUE AND JURISDICTION

7. Betty Marie Nance is a Colorado resident for purposes of statutory jurisdiction in this suit. Susan Sawyer, pursuant to statute, takes the residency of Betty Marie Nance, and for purposes of this action is a resident of Colorado.

8. The rollover crash, which forms the basis for this complaint, occurred on U.S. Interstate 25 south of milepost no. 401 in Mora County, New Mexico. The death, which forms the basis for the Wrongful Death claims, and the other causes of action, occurred at the scene of the rollover crash in Mora County. Thus, the cause of action originated in Mora County.

9. Pursuant to §38-3-1(A) and (F), NMSA (1978 Comp), venue is proper in Mora County, and this Court has jurisdiction over each of the defendants in this action.

## FACTS SUPPORTING THE CLAIMS

10. The defective vehicle involved in the rollover crash, a 2002 Ford Explorer 4 door XLT, bearing vehicle identification number 1FMZU63E92ZA46782 was designed, manufactured, assembled and/or distributed by Ford in the ordinary course of its business. At the time of the fatal accident on August 25, 2001, it was owned and operated by Enterprise or its affiliates as a rental car and was driven by Betty Marie Nance.

11. The Explorer was first sold by Ford as a 1991 model and was designed to replace the Bronco II, which has been judicially determined to be a defective and unreasonably dangerous vehicle. In fact, for a significant period of time, the Explorer was called the "4-door Bronco II." Ford used the Bronco II as the "image" or "target" for the design of the Explorer and patterned the testing and analysis of the rollover behavior of the Explorer on the history and the testing of the Bronco II.

12. Both the Bronco II and the Explorer were originally equipped with virtually identical front suspensions, rear suspensions, steering systems, tires, chassis and steering ratios. In 1995, Ford modified the Explorer by changing the front suspension systems from a twin I beam to a SLA suspension.

13. The design and testing history associated with the development of the Bronco II established that, at the time Ford designed and distributed the Explorer, Ford knew that sport utility vehicles ("SUVs") which incorporated a narrow track width, high center of gravity and swing axel suspension in their design had a dangerous tendency to roll over or flip during ordinary and foreseeable turning maneuvers. Ford also knew that the Explorer was not equipped to handle emergency or sudden maneuvers at highway speeds and that the vehicle was not equipped with reasonable safety features which would protect occupants of the vehicle in the event of a rollover.

14. Betty Marie Nance was employed as a part-time driver by Enterprise. Included in her duties was the driving of rental vehicles between various cities and towns in which Enterprise, or its affiliates, conducted business. On Saturday, August 25, 2001, Betty Marie Nance was driving the 2002 Ford Explorer bearing vehicle identification number 1FMZU63E92ZA46782 in the course of her employment, on U.S. Interstate 25. At approximately 11:00am., while traveling south on a straight and level stretch of the interstate, which was in excellent condition, at a speed well within the published design limits of the Explorer, the Explorer traveled off the pavement. Betty Marie Nance attempted to correct the Explorer's course, executing ordinary emergency turning maneuvers, but the Explorer then began to yaw and rolled over multiple times. In the rollover, Betty Marie Nance was killed.

15. The rollover crash that took the life of Betty Marie Nance was caused solely and exclusively by the defective design of the Explorer; and Ford's failure to warn Betty Marie Nance of the danger posed by the Explorer.

## COUNT ONE – STRICT LIABILITY

16. At all times material, Ford was in the business of designing, manufacturing or otherwise distributing automobiles.

17. The Explorer was defective and unreasonably dangerous at the time it was designed, manufactured and distributed. The defective nature of the vehicle included, but was not limited to:

   a. The Explorer is defective in that the design of the "package", which includes the combination of track width, wheelbase and vertical center of gravity height, creates an unreasonable risk of rollover given the uses for which the vehicle is marketed;

   b. The vehicle was marketed as a forgiving, safe and stable passenger carrying vehicle, which was intended to lead, and did lead, consumers to believe that the vehicle was safe for highway transportation and free of any unreasonable risk of rollover in turning maneuvers experienced daily by consumers;

   c. The combination of the foregoing, creates an unreasonable risk of rollover that is beyond the expectations of the consumer and creates a risk that far outweighs any benefit associated with the design;

   d. The combination of the foregoing defects create an unreasonable risk of rollover given that the Explorer was intentionally marketed as a "station wagon" for use on highways at highway speeds with full knowledge that the Explorer could not handle

the conditions created when an ordinary turning maneuver such as a sudden course correction is attempted, and will roll over due to tire friction forces;

e. The Explorer was defectively marketed in that consumers and drivers were led to believe that the Explorer was a safe and stable "station wagon-type" vehicle without providing necessary and adequate warnings and instructions that would have given the consumer and driver adequate information so that an informed choice could be made about purchasing and/or driving the Explorer;

f. The Explorer was defective because drivers were not warned of the danger of rollover in circumstances where a sudden course correction required; and

g. The Explorer was defective in that it was not designed to provide reasonable and necessary protection in the event of a rollover accident.

## COUNT TWO – NEGLIGENCE

18. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as though they were set forth herein.

19. At all times relevant to the Complaint, Ford was in the business of supplying motor vehicles for use on the public roadways. Ford held itself out has having special expertise in the industry. As such, Ford owed Plaintiffs and Betty Marie Nance a duty to use reasonable care in the design; manufacture; preparation; testing; instructing; warnings, sale and service surrounding the Explorer. Ford violated this duty by supplying a vehicle that was defective by its failure to inspect and warn of a known defect. The negligent acts included, but are not limited to the following acts or omissions:

a. Negligently designing the Explorer from a handling and stability standpoint;

b. Negligently designing the Explorer with poor rollover resistance;

c. Negligently designing the Explorer from an occupant protection standpoint;

d. Negligently testing the Explorer from a handling and stability standpoint;

e. Negligently failing to test the Explorer to ensure the design provides reasonable occupant protection in the event of a rollover;

f. Negligently failing to adequately train and assist dealers in the dangers associated with the Explorer;

g. Negligently failing to disclose known problems and defects;

h. Negligently marketing the Explorer as a safe and stable passenger vehicle;

i. Negligently failing to meet or exceed internal corporate guidelines;

j. Negligently designing the Explorer from a marketing standpoint;

k. Negligently failing to inform the consumer and/or driver, including Betty Marie Nance, of information that Ford knew about rollover risk in light utility Explorers, thus depriving the consumer and/or driver of the right to make a conscious and free choice;

l. Negligently failing to comply with the standards of care applicable in the automotive industry insofar as providing reasonable occupant protection in a rollover;

m. Negligently failing to comply with applicable and necessary Federal Motor Vehicle Safety Standards;

n. Negligently failing to notify consumers, as required by law, that a defect exists in the Explorer that relates to public safety;

o. Negligently failing to recall the Explorer or, alternatively, retrofitting the Explorer to enhance safety.

These acts of negligence were a proximate cause of the crash, injuries and damages suffered by the Plaintiffs. The dangers referenced earlier were reasonably foreseeable or scientifically discoverable at the time of exposure.

## COUNT THREE – NEGLIGENCE PER SE

20. Plaintiffs incorporate by reference the allegations in the foregoing paragraphs as though they were originally set forth herein.

21. Each of the foregoing acts and/or omissions, individually, or together in various combinations, also constitute negligence per se, in that the design of the Explorer driven by Betty Marie Nance failed to comply with the applicable industry and government standards. The foregoing negligent acts and omissions were a proximate cause of the death of Betty Marie Nance. The injuries and death suffered by Betty Marie Nance were injuries and damages of the type and kind intended to be prevented by these standards, and Betty Marie Nance was of the class intended to be afforded protection by these standards.

## COUNT IV – MISREPRESENTATION

22. Plaintiffs incorporate by reference the allegations in the foregoing as though they were originally set forth herein.

23. Ford is in the business of marketing and selling automobiles, made misrepresentations to the public in general and specifically to Enterprise, its affiliates and its drivers, such as Betty Marie Nance, of material facts concerning the character and quality of the Explorer all of whom justifiably relied upon these representations that induced and influenced Betty Marie

Nance to drive the 2002 Explorer. The misrepresentations made by Fords include, but are not limited to:

a. The Explorer had a proper design and was safe and stable from a handling and stability performance standpoint;

b. The Explorer would perform in a safe and forgiving manner under foreseeable driving circumstances;

c. The Explorer had a proper design of its steering, braking, suspension, and door frame systems;

d. The Explorer was properly designed and manufactured so as not to create an unreasonable and dangerous propensity to roll over under normal as well as foreseeable emergency conditions.

e. The Explorer was properly designed and manufactured with adequate crash protection;

24. These misrepresentations were intentional in that by August, 2001, when Betty Marie Nance drove the Explorer, Ford knew that Explorers posed an unreasonable risk of harm to the driver, including the dangers associated with turning maneuvers and oversteering characteristics.

25. Alternatively, these misrepresentations were grossly negligent, in that, by August, 2001, Ford knew that Explorers posed an unreasonable risk of harm to the driver.

## COUNT FIVE – UNFAIR TRADE PRACTICES ACT CLAIM

26. Plaintiffs incorporate by reference the allegations in the foregoing, as though they were originally set forth herein.

27. The Defendant violated the provisions of the New Mexico Unfair Trade Practices Act by engaging in one or more of the following unfair or deceptive trade practices:

   a. Causing confusions as to the proper driving methods to be used with Explorers, in violation of §57-12-2(D)(2) NMSA (1978 Comp.);
   b. Misrepresenting that the design of the Explorer had met government standards and possessed characteristics that it did not, in fact, possess, in violation of §57-12-2(D)(5) NMSA (1978 Comp.);
   c. Misrepresenting that Explorers were of a particular standard, quality, or grade in violation of §57-12-2(D)(7) NMSA (1978 Comp);
   d. Using exaggeration, innuendo or ambiguity as to a material fact or failing to do so in order to deceive purchasers, in violation of §57-12-2(D)(14) NMSA (1978 Comp.);
   e. Failing to deliver the safe and serviceable goods contracted for in violation of §57-12-2(D)(17);
   f. The definition of "unfair or deceptive trade practices" is not limited to the foregoing statutory provisions, and the Plaintiffs assert that Ford violated the New Mexico Unfair Trade Practices Act by:
      i. Committing each of the acts or permitting each of the omissions set forth elsewhere in this complaint; and/or
      ii. By requiring consumers who asserted claims or filed lawsuits alleging defects in the Explorer, and who elected to settle those claims or lawsuits rather than engage in prolonged litigation with multi-national corporations, to seal and not reveal the factual evidence which supported their claims of liability.

28. Each of the foregoing practices constitutes an unconscionable trade practice as defined by §57-12-2(E).

29. Pursuant to §57-12-10 NMSA (1978 Comp.) Susan Sawyer as personal representative of Betty Marie Nance has a statutory right to assert a claim for each of the foregoing unfair and unconscionable trade practices.

30. Ford willfully engaged in the foregoing unfair, deceptive and unconscionable trade practices and, pursuant to §57-12-10(B), Susan Sawyer as personal representative of Betty Marie Nance is entitled to elect recover treble damages.

31. Pursuant to §57-12-10(D), Plaintiffs are entitled to recover attorney fees and costs.

## COUNT SIX – PRIMA FACIE TORT

32. Plaintiffs incorporate by reference the allegations in the foregoing, as though they were originally set forth herein.

33. For many years prior to August 25, 2001, it has been the corporate policy of Ford and its insurers to require as a condition of settlement that consumers and personal representatives of consumers who brought claims against Ford enter into secret and confidential settlements.

34. Ford engaged in a corporate practice of either using the threat of a costly trial, and prolonged appeal of any verdict that might be rendered against them, to encourage plaintiffs to settle their cases. They then required the plaintiffs and their lawyers not to disclose any of the aspects of the case, including information regarding the safety of the Explorer.

35. While Ford and their insurers may have had a legitimate reason to keep the amounts paid and the terms of settlement confidential, the only reason for keeping confidential the evidence related to the cause of the accident, and the basis for Ford's liability, was to protect its

venture and investment in the development and marketing of the Explorer and to avoid the publicity and governmental scrutiny that would result if the facts giving rise to the claims they were settling were exposed to the public.

36. Ford imposed this requirement for over nine years prior to the rollover crash that killed Betty Marie Nance. This policy had the direct effect of covering up the dangers inherent in Explorers.

37. Ford ceased manufacturing the Bronco II only after verdicts revealed the inherent danger in the Bronco II design.

38. The release of information to the public regarding the dangers inherent in Explorers was intentionally delayed by the use of confidentiality provisions, protective orders, and sealed files in previous cases involving claims similar, if not identical to those asserted herein.

39. By intentionally imposing otherwise unlawful settlement cover-ups, Ford maliciously intended to expose others, including the Plaintiffs in this case, to physical harm, death, and property damage.

40. These secret settlements withheld important information regarding defects in Firestone-equipped Explorers, and by August 25, 2001 there was no sufficient justification for keeping the mounting evidence of tire failures secret.

41. There was not sufficient justification for the acts of Ford.

42. This corporate practice violates public policy, and while it might otherwise be viewed by Ford as a lawful business practice, when it is pursued in manner that results in injury and death to innocent drivers of Explorers such as the Betty Marie Nance, it constitutes the commission of a prima facie tort under New Mexico law.

## COUNT SEVEN – LOSS OF CONSORTIUM, COMPANIONSHIP AND ENJOYMENT OF LIFE

43. Plaintiffs incorporate by reference the allegations in the foregoing, as though they were originally set forth herein.

44. Plaintiffs Susan Sawyer, Christine Bettendorf, Bob Nance and David Nance each enjoyed a close, unique and loving familial relationship with Betty Marie Nance. As a result Betty's death, these Plaintiffs have each suffered, and will continue to suffer, great personal emotional distress arising from their loss of Betty's society, companionship, comfort, aid, protection, love and affection.

45. Ford could easily foresee that its wrongful actions and omissions associated with Explorers would, in addition to causing the death and severe injury of numerous victims like Betty, cause severe emotional distress to the children of those victims.

46. As a result of Fords' acts or omissions, Plaintiffs are each entitled to damages for loss of consortium and emotional distress arising from the loss of his or her unique relationship with Betty.

## COUNT EIGHT – BREACH OF EXPRESS AND IMPLIED WARRANTY

47. Plaintiffs incorporate by reference the allegations in the foregoing, as though they were originally set forth herein.

48. On or about August 25, 2001, when the Betty Marie Nance was the driver of the 2002 Explorer which is the subject of this Complaint, Ford, expressly and impliedly warranted to the potential drivers of the Explorer, that each was of merchantable quality and safe for the use for which it was intended.

49. Betty Marie Nance relied on the skill and judgment of Ford, and on said express and implied warranties of Ford, as drivers of the Explorer and each of its component parts, and on the date of the fatal accident was using the Explorer in a reasonably foreseeable or intended manner.

50. The Explorer was not safe for intended use, or of merchantable quality as warranted by Ford in that when during use in a reasonably foreseeable manner the 2002 Ford Explorer bearing vehicle identification number 1FMZU63E92ZA46782 went into an uncontrollable yaw, rolling over and killing Betty Marie Nance as more fully set forth above. Ford has been given notice of the breach of warranties with the filing of this action.

51. As a direct legal and proximate result of the breach of express and implied warranties, the injuries and damages hereinabove set forth were sustained.

## DAMAGES AND OTHER RELIEF

52. **Compensatory Damages**: As a proximate result of the wrongful conduct of Ford, the Plaintiffs have suffered injuries and damages. The Plaintiffs are seeking pecuniary and non pecuniary benefits as damages from Ford to compensate them for the following elements of damage:

a. Funeral and accidental death expenses for Betty Marie Nance;

b. Future loss of earning capacity for Betty Marie Nance;

c. Any aggravating and or mitigating circumstances attending Ford's wrongful conduct;

d. Pain and suffering experienced by Betty Marie Nance before her death;

e. Loss of the enjoyment of life for Betty Marie Nance;

f. Past and future mental anguish by the surviving children of Betty Marie Nance;

g. Loss of society and companionship by the children of Betty Marie Nance;

h. Property damage.

i. The value of lost household services performed by Betty Marie Nance;

j. The value of Betty Marie Nance's life apart from her earning capacity.

k. Pre and post judgment interest.

l. Incidental expenses and damages.

m. Attorney fees and costs as provided by law.

n. For such other and further relief as the Court deems just and proper

53. The Plaintiffs reserve the right to prove the amount of damages at trial.

54. **Punitive Damages**: In addition to compensatory damages, the Plaintiffs seek punitive damages based on Ford's gross negligence and willful, wanton and reckless conduct in that:

a. The Explorer was designed to replace the Bronco II. In fact, the Explorer was originally called the 4-door Bronco II. The Bronco II has been judicially determined to be a defective and unreasonably dangerous vehicle. The design and testing history behind the development of the Bronco II establishes the knowledge that Ford had at the time it designed and distributed the Explorer. This included the knowledge that SUV's designed with the combination of a narrow track width and high center of gravity had a dangerous tendency to roll over or flip in ordinary turning maneuvers when operated as a passenger-type vehicle. Ford knew this fact when it sold the Explorer. Ford also knew that the Explorer was not equipped to properly handle emergency maneuvers at interstate highway speeds, as evidenced by statistics involving rollover accidents involving company-owned vehicles. Ford likewise knew that the Explorer was not equipped with reasonable safety features to protect

occupants when a rollover did occur. Ford consciously chose to market the Explorer despite this knowledge and exposed the consuming public to an extreme risk of injury or death. The conduct justifying an award of punitive damages includes, but is not limited to, Ford's despicable, malicious, willful, wanton and reckless design, manufacture, marketing, testing and distribution of a product that it knew was unreasonably dangerous and defective. The amount of punitive damages to be awarded is within the discretion of the jury.

b. In addition, Plaintiff seeks punitive and exemplary damages, within the discretion of the jury or fact finders, in an amount not less that it would have cost Ford to correct the defects in the Explorer, respectively, prior to the first distributing same, and further that Ford be required to recall all Explorers to avoid further damages to users.

55. The Plaintiffs reserve the right to amend their complaint to add additional counts as discovery continues.

WHEREFORE, Plaintiffs pray for judgment on their complaint against the defendants, for trebled damages or punitive damages, attorney fees, costs, post-judgment interest, if applicable, and for all other appropriate relief.

Respectfully submitted,

BANNERMAN & WILLIAMS P.A.

By ______________________
Barry D. Williams
James T. Reist
Attorneys for Plaintiffs
6400 Uptown Blvd. NE, Suite 310-E
Albuquerque, NM 87110
(505) 837-1900 Telephone
(505) 837-1800 Facsimile

Tab Turner, Esq.
Tab Turner & Associates
4702 West Commercial Drive, Suite B3
North Little Rock, Arkansas 72116
(501) 791-2277 Telephone
(501) 791-1251 Facsimile

FOURTH JUDICIAL DISTRICT COURT
COUNTY OF MORA
STATE OF NEW MEXICO

SUSAN SAWYER INDIVIDUALLY AND AS THE DULY APPOINTED PERSONAL REPRESENTATIVE FOR THE WRONGFUL DEATH OF BETTY MARIE NANCE, DECEASED, CHRISTINE BETTENDORF, BOB NANCE AND DAVID NANCE, CHILDREN OF THE DECEASED BETTY MARIE NANCE

Plaintiffs

CAUSE NO. 2003-38-CV

V

THE FORD MOTOR COMPANY

Defendants.

**SUMMONS**

TO: **THE FORD MOTOR COMPANY**
**c/o its Registered Agent**
**CT Corporation System**
**P.O. Box 9318**
**Santa Fe, NM 87504**

DEFENDANT(s) GREETING:

You are hereby directed to serve a pleading or motion in response to the Complaint within thirty (30) days after service of the Summons, and file the same, all as provided by law.

You are notified that, unless you so serve and file a responsive pleading or motion, the plaintiff(s) will apply to the Court for the relief demanded in the Complaint.

Attorney or Attorneys for Plaintiff: Barry D. Williams/James T. Reist
Address: BANNERMAN & WILLIAMS, P.A.
6400 Uptown Blvd., N.E., Suite 200W
Albuquerque, New Mexico 87102
(505) 837-1900/Fax (505) 837-1800

WITNESS the Honorable EUGENIO S. MATHIS, District Judge of said Court of the State of New Mexico and the Seal of the District Court of said County, this 2nd day of Sept 2003.

MACIE DOMINGUEZ-ROGERS
CLERK OF THE DISTRICT COURT

(SEAL)

By: [signature]
Deputy

NOTE: This summons does not require you to see, telephone or write to the District Judge of the Court at this time. It does require you or your attorney to file your legal defense to this case in writing with the Clerk of the District Court within thirty (30) days after the summons is legally served on you. If you do not do this, the party suing may get a Judgment by default against you.

## RETURN

STATE OF ____________ }
} SS
COUNTY OF ____________ }

RETURN FOR COMPLETION BY SHERIFF OR DEPUTY:

I certify that I served the within Summons in said County on the ________ day of ____________, 2003, by delivering a copy thereof, with copy of Complaint attached, in the following manner:

RETURN FOR COMPLETION BY OTHER PERSON MAKING SERVICE:

I, being duly sworn, on oath, say that I am over the age of 18 years and not a party to this lawsuit, and that I served the within Summons in said County on the ________ day of ____________, 2003, by delivering a copy thereof, with copy of Complaint attached, in the following manner:

*(check one box and fill in appropriate blanks)*

___ To Defendant ____________ ____________ *(used when Defendant receives copy of Summons, is read Summons or Complaint or refuses to receive Summons or hear reading.)*

___ To ____________, a person over fifteen (15) years of age and residing at the usual ____________ ____________, who at the time of such service was absent therefrom.

___ By posting a copy of the Summons and Complaint in the most public part of the premises of Defendant ____________ *(used if no person found at dwelling house or usual place of abode).*

___ To ____________, an agent authorized to receive service of process for Defendant____________.

___ To ____________, *(parent)(guardian)* of Defendant ________ *(used when Defendant is a minor or an incapacitated person)*

___ To ____________, ____________ ____________, name of person
title of person authorized to receive service
*(used when Defendant is corporation or association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision).*

Fees:

____________
Signature of Private Citizen Making Service

Subscribed and sworn to before me this ____ day of ____________, 2003

____________
Notary or Other Officer
Authorized to Administer Oaths

____________
Title

SHERIFF OF ____________
COUNTY State of ____________

____________
Sheriff

By: ____________
Deputy

FOURTH JUDICIAL DISTRICT COURT
COUNTY OF MORA
STATE OF NEW MEXICO

FILED ... OFFICE THIS
2003 SEP -2 AM 10:27
... ROGERS
COURT ADMINISTRATOR

SUSAN SAWYER INDIVIDUALLY AND AS THE DULY APPOINTED PERSONAL REPRESENTATIVE FOR THE WRONGFUL DEATH OF BETTY MARIE NANCE, DECEASED, CHRISTINE BETTENDORF, BOB NANCE AND DAVID NANCE, CHILDREN OF THE DECEASED BETTY MARIE NANCE

Plaintiffs

CAUSE NO. 2003-38-CV

V

THE FORD MOTOR COMPANY

Defendants.

**JURY DEMAND**

Plaintiffs, by and through their undersigned counsel, demands a trial by a twelve person jury in the above captioned case.

Respectfully submitted,

BANNERMAN & WILLIAMS, P.A.

By [signature]
Barry D. Williams
James T. Reist
Attorneys for Plaintiffs
6400 Uptown Blvd. NE, Suite 200 West
Albuquerque, NM 87110
(505) 837-1900 Telephone
(505) 837-1800 Facsimile

Tab Turner, Esq.
Tab Turner & Associates
4702 West Commercial Drive, Suite B3
North Little Rock, Arkansas 72116
(501) 791-2277 Telephone
(501) 791-1251 Facsimile

CT System

**Service of Process Transmittal Form**
**Santa Fe, New Mexico**

**09/05/2003**

**Via Federal Express (2nd Day)**

TO: Chris Dzbanski
Ford Motor Company
Three Parklane Blvd., Ste.1400 West
Dearborn, MI 48126

458119

**RE: PROCESS SERVED IN NEW MEXICO**

**FOR** Ford Motor Company Domestic State: De

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

Betty Marie Nance

**1. TITLE OF ACTION:** THE FORD MOTOR COMPANY, PLAINTIFF vs THE FORD MOTOR COMPANY, DEFENDANTS

**2. DOCUMENT(S) SERVED:** SUMONS ( 2 COPIES), ORIGINAL COMPLAINT FOR WRONGFUL DEATH, STRICT COVER LETTER, LIABILITY, NEGLIGENCE, LOSS OF CONSORTIUM, AND PRIMA FACIE TORT, AND JURY DEMAND

**3. COURT:** FOURTH JUDICIAL DISTRICT COURT, MORA COUNTY, NEW MEXICO
Case Number CV-2003-38

**4. NATURE OF ACTION:** WRONGFUL DEATH

**5. ON WHOM PROCESS WAS SERVED:** CT Corporation System, Santa Fe, New Mexico

**6. DATE AND HOUR OF SERVICE:** By Certified mail on 09/05/2003 with Postmarked Date 09/03/2003

**7. APPEARANCE OR ANSWER DUE:** 30 DAYS

**8. ATTORNEY(S):** BARRY D WILLAMS
6400 UPTOWN BLVD. N.E.
SUITE 200W
ALBUQUERQUE, NM 87102

**9. REMARKS:** i-Note sent 09/05/2003 to CDZBANSK@FORD.COM

OFFICE OF THE GENERAL COUNSEL
'03 SEP -8 AM 11:44
LITIGATION PRACTICE GROUP

**SIGNED** CT Corporation System

**PER** Supervisor of Process
**ADDRESS** 123 East Marcy Street
Santa Fe, NM 87501
SOP WS 0005673972

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.